SWAIM *v.* BEAKLEY.

## Opinion delivered April 1, 1918.

CONTRACTS—SALE OF LAND—CONDITION SUBSEQUENT.—Land was sold to
A., he taking the estate in fee, the parties agreeing that if A. failed to
pay within a certain time that the conveyance become void, and
that the lands should revert to the grantors. *Held,* the contract
provided for a condition subsequent, upon the happening of which
the conveyance was defeated.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*J. B. Reed* and *W. A. Leach,* for appellant.

1. Whether the instrument be a deed with a condition precedent or subsequent. McAlister was not in default until a proper deed was tendered and performance demanded. 30 Cyc. 730; 73 Ark. 491; 44 *Id.* 492.

2. A tender was made and a deed demanded by plaintiff and the chancellor's decree is against the evidence.

*Jas. B. Gray,* for appellees.

The testimony shows that McAlister abandoned the trade and never tendered the money nor demanded a deed. He was guilty of gross laches and comes too late. He forfeited all interest in the land. 36 Cyc. 721; 103 Ark. 194; 10 R. C. L.; Ann. Cases. 1912 C. 560-1; 143 S. W. 715.

### STATEMENT OF FACTS.

This was a bill in equity by Pat M. Swaim against N. B. Beakley, Kathleen Beakley, J. H. Swaim and Emma J. Swaim for a specific performance of a contract of the sale of land, or for damages for the failure of the defendants to perform the conditions of a deed executed by N. B. Beakley and Kathleen Beakley to C. W. McAlister.

The defendants filed an answer in which all the material allegations of the complaint were denied and by way of cross-complaint they set up title in J. H. Swaim and Emma J. Swaim which was acquired by a warranty

deed from N. B. Beakley and Kathleen Beakley, the owners of the land, and asked that their title to said land be quieted. The deed from Kathleen Beakley and N. B. Beakley to C. W. McAlister, which is the basis of the controversy in this case, is as follows:

"For and in consideration of the sum of One Hundred Dollars to me in hand paid the receipt of which is hereby acknowledged and the undertaking of C. W. McAlister to pay Kathleen Beakley and W. A. Jackson Estate the sum of Thirty-four Hundred Dollars on receipt of deed from W. A. Jackson estate we hereby grant, bargain, sell and convey unto the said C. W. McAlister and to his heirs, successors and assigns upon the conditions hereinafter written the following described land situated in Lonoke County, Arkansas, to-wit: N.W. 1-4 Sec. 13; N.W. 1-4 N.E. 1-4 Sec. 13; N 1-2 S. W. 1-4 Sec. 13 and S.W. 1-4 S.W. 1-4 Sec. 13, 1 North 9 West.

"If said C. W. McAlister shall fail to pay the sum hereinbefore named within the times above set forth, this conveyance shall be void and all rights and liabilities of either party thereunder shall cease, and said lands shall revert to Kathleen Beakley and W. A. Jackson estate without any reconveyance from the said C. W. McAlister.

"Witness our hands this 13th day of June, 1914."

The deed was signed by Kathleen Beakley and N. B. Beakley and duly acknowledged and filed for record on the 13th day of June, 1914.

According to the testimony of C. W. McAlister, in the spring of 1914, he purchased the land in controversy from Dr. N. B. Beakley as agent for his wife, Kathleen Beakley, and Etta Louise Jackson, a minor, who owned the lands as tenants in common. McAlister purchased the land for $3,500, one hundred dollars of which was paid in cash and the balance was to be paid as soon as McAlister received the deed to the undivided interest of Etta Louise Jackson. J. W. Shewmake was interested in the contract with McAlister and was to furnish him the money with which to pay for the land. They knew that the

interest of the minor would have to be sold under orders of the probate court of Lonoke county, in which the land was situated. At the time of this sale there was a panic and money was hard to get. McAlister knew that there had been an order obtained from the probate court for the sale of the minor's interest in the land. Shewmake told him that there was an error in advertising the land and he let the matter rock along and made no objection about the delay. He talked with Dr. Beakley about it and supposed when he was ready to close the matter up he would notify him. There was nothing said to him about either of them calling the trade off.

J.W. Shewmake testified that he had a half interest in the trade made by McAlister although the deed was taken in McAlister's name. He stated that he presumed that Dr. Beakley knew he was interested in the deal because his check paid the hundred dollars on the land; that there were over 330 acres of the land and that the land was worth twenty-five dollars per acre at the time of their purchase on June 13, 1914. On the 5th day of February, 1917, McAlister and wife executed a quitclaim deed to the land in controversy to Pat M. Swaim for the consideration of fifty dollars.

According to the testimony of Dr. Beakley he acted for his wife and as the guardian of Etta Louise Jackson, a minor, in the sale of the land. They each owned a one-half interest therein and McAlister knew of that fact. Dr. Beakley did not know that Shewmake was interested in the purchase of the land. McAlister understood that there would have to be an order of the probate court for the sale of the minor's undivided one-half interest in the land. An order was obtained to sell the minor's interest in the land in controversy together with other lands in which she had an interest in Lonoke County, Arkansas. The lands were advertised for sale under the order of the probate court and McAlister bid them in at one-half of the amount mentioned in the deed. Before the sale was confirmed by the probate court, McAlister said that he

could not get up the money to pay for the land and would have to give up the sale. McAlister stated that he did not have any money and could not borrow any. Dr. Beakley knew that McAlister did not have any money. There was a panic at the time and money was hard to get. The probate court refused to approve the sale to McAlister and as a reason therefor, recited in the order that McAlister had neglected and refused to pay for the land or to carry out his bid therefor. McAlister never entered into possession of the land but it remained in the possession of Kathleen Beakley and Etta Louise Jackson.

On the 12th day of December, 1916, Kathleen Beakley and N. B. Beakley conveyed an undivided one-half interest in the land to J. H. Swaim and Emma J. Swaim for $2,500. They were put into possession of the land and have been in possession of it since that time. After McAlister abandoned his contract of purchase in 1914, Beakley made an effort to sell the land to other parties but was unable to do so. He sold the timber just before he sold the land to J. H. and Emma J. Swaim. The lands in question, in common with other lands in that community, have doubled in value since the 13th day of June, 1914. Their rise in value was brought about by changed conditions and good crops. Other facts will be referred to in the opinion.

The chancellor found the issues in favor of the defendants. It was therefore decreed that the complaint of the plaintiff be dismissed for want of equity. On the cross-complaint of the defendants it was decreed that the title to the lands in controversy be quieted and confirmed in the defendants, J. H. and Emma J. Swaim, against any right, title and interest which the plaintiff may have had in said land. The plaintiff has appealed.

HART, J., (after stating the facts). The deed from Kathleen Beakley and N. B. Beakley to C. W. McAlister was executed on condition that if McAlister failed to pay for the land at the time recited in the deed, the conveyance should be void and the lands should revert to Kathleen Beakley and Etta Louise Jackson.

In *Cooper* v. *Green,* 28 Ark. 48, it was held that conditions precedent are, as the term implies, such as must happen before the estate dependent upon them can arise or be enlarged, while conditions subsequent are such as, when they do happen, defeat an estate already vested.

In the present case McAlister took the estate in fee subject to be defeated by his failure to pay for the land at the time and in the manner stated in the deed. A comparison of the language used in the condition in the deed in the present case with the deed recited in the case of *Cooper* v. *Green, supra,* will show that it is a condition subsequent. This will also appear by a comparison of the condition with the condition referred to in the later case of *Moore* v. *Sharpe,* 91 Ark. 407, where the condition in the deed was treated as a condition subsequent.

In the case of *Cooper v. Green, supra,* it is recited in substance that the deed is to be void if the purchaser shall fail to pay the vendor either one of the installments of purchase money when they respectively fall due as recited in the deed. In the case of *Moore* v. *Sharpe, supra,* the condition is not set out but it is said that the deed was executed on the condition expressed therein that the grantee should build and complete a railroad within three years from the date thereof.

According to the testimony of Dr. Beakley, as soon as he could do so he procured an order of the probate court to be made for the sale of the minor's undivided one-half interest in the land in controversy and McAlister bid in the land at the sale. The probate court refused to confirm the sale because McAlister did not pay for it. Dr. Beakley and his wife were ready to carry out their part of the contract and deliver possession of the land to McAlister as soon as he paid for it. McAlister failed to obtain the money to pay for the land and told Dr. Beakley the sale would have to fall through on that account.

The chancellor properly found that the failure of McAlister to perform the condition expressed in the deed constituted a forfeiture of his interest in the land and

that the Beakleys had a right to sell the land to J. H. and Emma J. Swaim.

It is true the testimony of Dr. Beakley is flatly contradicted by that of McAlister, but Dr. Beakley is corroborated by the other facts and circumstances in the case. The testimony of all the witnesses shows that there was a panic in 1914, and that it was very difficult to borrow money. This stringency in the money market continued until the fall of 1915. McAlister executed a deed to the plaintiff, Pat M. Swaim, on the 5th day of February, 1917. By that time the land in common with other lands in that section of the country had doubled in value. During all the two years before the land began to rise in value, no effort was made by McAlister to obtain possession of the land or assert any right or title to it. The sale was treated by all the parties as having been abandoned and the rights of McAlister as having been forfeited for non-payment of the purchase money.

Therefore, the chancellor was right in dismissing the complaint for want of equity and in quieting and confirming the title of J. H. and Emma J. Swaim in the land against any right, title and interest of the plaintiff.

It will be remembered that J. H. and Emma J. Swaim had purchased the land from the Beakleys.

The decree will be affirmed.